## STATE OF HAWAII *v.* ABELINO RUIZ.

## No. 4523.

DECEMBER 13, 1966.

RICHARDSON, C.J., CASSIDY, WIRTZ,
LEWIS AND MIZUHA, JJ.

*Per Curiam.* Defendant was charged with indecent assault[1] on Debra ————, the six year old daughter of his next door neighbor. He was convicted after trial jury waived and appealed from the judgment, which suspended the imposition of sentence and placed defendant on probation for three years.

We do not reach the points specified as error. At the outset we encounter plain error on the part of the trial court in a finding made by the court.[2] In rendering decision the court said:

> I agree with you that if the government had failed

---

[1] R.L.H. 1955, § 309-17.

[2] Pursuant to H.R.Cr.P., Rule 23(c), in a case tried without a jury special findings may be made orally in open court or in writing. In this case, the court made what is tantamount to an oral finding in open court. *Cf., Cesario* v. *United States,* 200 F.2d 232, 233 (1st Cir.). While special findings are to be made on request and no such request appears here, that does not detract from the significance of what was said in rendering the decision. A judge has power to make special findings without a request. *United States* v. *Belville,* 82 F. Supp. 650 (S.D.W.Va.).

to prove the guilt beyond a reasonable doubt and had only proved it by a preponderance of the evidence, then the defendant is entitled to an acquittal. Basically, this case comes down to the question of credibility of the evidence and I will cut into the meat of my thinking here by saying that if, at the time of the inquiry, the defendant had reported, either to Killebrew or to the other agent, the same story that he told on the stand here, I would unquestionably turn him loose but I have concluded, after I had given this matter very careful thought, that this was an after-fabrication and therefore I am going to find the defendant guilty, as charged. * * *."

The story the defendant told on the stand was that Debra injured her crotch while playing on an iron cot in his son's bedroom, and that he applied Vaseline digitally to the child's crotch without removing her panties. Defendant was a medical specialist in the Army Medical Service Corps, with three years' experience in pediatrics. The trial judge stated that this story would have satisfied him had he not concluded that it was "an after-fabrication." He had determined that it was an after-fabrication because the defendant had not told this story "to Killebrew or to the other agent." From the oral decision it is apparent that this was the turning point which caused the court to find the defendant guilty. While the court did not elaborate further, enough was said to show that the court's disbelief of defendant's story caused the court to accept the child's very different story as related by her mother, according to which defendant had taken off her panties, had unzipped his pants, had taken out his penis and put it between her legs, and had had an ejaculation. The two stories were in agreement only in respect of the application of the Vaseline, this being part of the child's story as well as defendant's. The child did not testify.

Defendant was interviewed by an investigator of the

Hawaiian Armed Services Police on the morning after the incident. Another investigator, present at the interview, testified that defendant denied everything. Asked if defendant told his own version of what happened he testified that "he did tell a version" but that he denied "being sexually involved." Thereafter, on that same morning, he was interviewed by another Army investigator, a Mr. Killebrew, who testified as follows:

"During the course of talking to Sgt. Ruiz, he told me that Debra had injured herself at his home, that she had fallen on the bed or off the bed, and he had taken her to the bathroom for the purpose of giving her first aid, and that he had rubbed Vaseline on the inside of her legs up near the—up in the crotch area. But he denied at this time that anything sexually had taken place.

"It was in the—the 11:30 interview terminated and he was taken to chow. And I interviewed him again at one o'clock. And at this time he told me that while rubbing the Vaseline in the area of Debra's crotch, that he had become sexually aroused, that he had unzipped his trousers and turned his back on Debra and had an ejaculation.

"This was as a result of questioning and I told him some white substance had been seen on the floor, and he explained that this was semen."

While on the stand defendant denied having an ejaculation in the presence of the child. Had the trial court attached significance to this it would have been understandable in view of defendant's statement during the third interview held by the Army investigators, the one o'clock interview.[3] However, the court did not find that

---

[3] This opinion is not to be understood as passing upon the admissibility of the statements made to the investigators. For present purposes we proceed on the basis of the trial court's rulings and assume their admissibility. However, since we reverse the judgment, it is appropriate to add the following: In the event of a new trial, admissibility of the statements made to the investigators will be governed by the require-

what occurred was what was related by defendant during this third interview; or that defendant was not to be believed because on the stand he had attempted to conceal something which he previously had admitted; or that defendant's actions constituted the taking of indecent and improper liberties irrespective of which version was believed. Instead, the court ruled that defendant's story was incredible because it was told for the first time on the stand and had not been told to any of the investigators at the time of their inquiry. But the record plainly shows that this story was told to one or both investigators during the interviews, thus was not fabricated after the inquiry. Hence, the stated ground of the decision was erroneous. This comes within the category of "plain error," and accordingly may be noticed on this court's own motion though not called to the attention of the trial court or this court. H.R.Cr.P., Rule 52(b); 4 Barron & Holtzoff, *Federal Practice and Procedure,* § 2587 (Rules ed.). The power to notice error on the court's own motion will be exercised only in an exceptional case. *Ramsey* v. *United States,* 332 F.2d 875, 877 (8th Cir.). We find this to be a case which calls for invoking the rule. The error disclosed by the record is fundamental.

The case cannot be remanded for further consideration on the evidence adduced, as the trial judge is no longer on the bench. A new trial must be ordered.

Reversed and remanded for a new trial.

*Stuart M. Cowan* (*Greenstein & Cowan* of counsel) for defendant-appellant.

*Edwin Y. Sasaki,* Deputy Prosecuting Attorney, City and County of Honolulu (*John H. Peters,* Prosecuting Attorney, with him on the brief) for plaintiff-appellee.

---

ments set forth in *Miranda* v. *Arizona,* 384 U.S. 436 (1966), even though the statements were taken and the first trial was held before that case was decided. *Gibson* v. *United States,* 363 F.2d 146, 148 (5th Cir.); *State* v. *Brock,* 101 Ariz. 168, 416 P.2d 601, 605; *State* v. *McCarther,* 197 Kan. 279, 416 P.2d 290, 296.